```
                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE MIDDLE DISTRICT OF GEORGIA
                              COLUMBUS DIVISION

MCDONALD'S CORPORATION,            *

      Plaintiff,                   *

vs.                                *
                                         CASE NO. 4:21-CV-97 (CDL)
ROGER C. ROSENFELD REVOCABLE       *
TRUST OF 2005 and ROGER C.
ROSENFELD,                         *

      Defendants.                  *
```

O R D E R

Plaintiff McDonald's Corporation operates a store in Columbus, Georgia on land leased to it by Defendants Roger C. Rosenfeld Revocable Trust and Roger C. Rosenfeld. The parties' lease agreement includes two different options for McDonald's to purchase the leased property. One is a straightforward option with a designated purchase price. The other, which is found in a section of the lease captioned "right of first refusal," gives McDonald's the right to purchase the property when a third party has offered to buy it if McDonald's pays the same price offered by the third party. These two provisions conflict when a third party offers to buy the property for more than the price set in the option agreement. This conflict gives rise to the current action.

Defendants received an offer to purchase the property and notified McDonald's of this offer as is required by the parties'

lease agreement. Instead of matching the third-party's offer pursuant to the right of first refusal, McDonald's attempted to exercise its option to purchase the property under a separate section of the lease agreement which established a set price for the property that was lower than the offer from the third-party.

McDonald's seeks a declaratory judgment that it has the right under the lease agreement to exercise its option to purchase the property for the contractually-fixed price notwithstanding that the third-party offer exceeds that amount. Defendants maintain that if McDonald's wishes to purchase the property, it may only do so pursuant to the right of first refusal provision in the agreement which requires it to match the offer of the third-party. Presently pending before the Court are motions by each party for judgment as a matter of law declaring that their respective interpretation of these provisions in the lease agreement are correct. As explained in the remainder of this Order, the Court finds that the relevant terms in the lease agreement are ambiguous and that the ambiguity cannot be eliminated using standard rules of contract interpretation. Therefore, the parties' contractual intent must be determined by considering evidence outside the written agreement. The present factual record does not illuminate the parties' intent and certainly does not establish that either party is entitled to judgment as a matter of law. Accordingly, the motions (ECF Nos. 9 & 10) are denied.

FACTUAL BACKGROUND

The relevant facts are largely undisputed. McDonald's operates a store in Columbus on land leased to it by Defendants. On April 22, 2021, Defendants informed McDonald's that a third party offered to purchase the property for $1.151 million dollars. Compl. ¶ 22, ECF No. 1. On May 13, 2021, McDonald's sent Defendants a letter in which McDonald's purported to exercise its Option to Purchase the property for $770,000.00, which is the fixed price set in the lease agreement. *Id.* ¶ 23. Defendants refused to sell the property to McDonald's for that price, arguing that McDonald's option to purchase the property for a fixed price was terminated by Defendants' notice of a third party's offer to purchase the property. *Id.* ¶ 24. Defendants maintain that once they notified McDonald's of this third-party offer, McDonald's only had a right to match the third-party offer pursuant to the contractual right of first refusal. If the right of first refusal provision applies, McDonalds must pay $1.151 million to obtain the property; if the separate option to purchase provision applies, McDonalds has the right to purchase the property for $770,000.

**I.   Article 27 – Right of First Refusal**

Article 27 of the lease agreement contains a right of first refusal.[1] It states in relevant part:

---

[1] McDonald's is referred to as the "Tenant" in the relevant lease provisions.

3

> Tenant shall have the first option to purchase the Premises or the beneficial interest in the Premises by giving written notice to Landlord of its intention to purchase the Premises within 30 days after it receives Landlord's notice of an offer to purchase at the same price (or, if the Premises are part of a larger parcel, then the dollar amount allocated to the Premises) and on the same terms as the offer, except as provided below. If Tenant does not exercise the first option to purchase, this Lease shall remain in full force and effect and shall bind both Landlord and any purchaser or purchasers, and Tenant shall have, as against Landlord or any subsequent purchase, the continuing first option to purchase the Premises or the beneficial interest or any part, as described above, upon the terms of any subsequent offer or offers to purchase.
>
>   . . . .
>
> If there is any conflict between the provisions of this Article and the terms contained in the offer to purchase, then the terms of this Article shall control and supersede those contained in the offer to purchase. Neither notice to Tenant of any offers to which this Article applies nor the sale of the Premises to a third party shall terminate any other options or rights presently or subsequently held by Tenant under this Lease, except for Tenant's Option to Purchase as set forth in New Article 29, below.

Pl.'s Mot. for J. on the Pleadings Ex. A., 2009 Amendment to Lease 12-13, ECF No. 10-2 (hereinafter "Contract").

**II. Article 29 – Option to Purchase**

Article 29 of the lease agreement provides McDonald's with an option to purchase the property for the set price of $770,000 even if there has been no offer by a third-party. But it does reference the right of first refusal in Article 27 as follows:

> This Option to Purchase shall continue in full force and effect for the entire term of this Lease and any

4

extension or renewals of the term.  Notwithstanding the foregoing, if the premises are purchase by a third party after Tenant fails to exercise its right of first refusal on a sale to that third party, then this Option to Purchase shall automatically become null and void.  If Tenant should receive notice of any offer pursuant to any right of first refusal to purchase or to lease either presently or subsequently held by Tenant, or if the premises are sold to any third party, this Option to Purchase shall be neither modified nor terminated.

Contract 15-16.

## DISCUSSION

The parties ask the Court to determine whether notice of an offer to buy pursuant to Article 27's right of first refusal terminates Article 29's option to purchase the property at a fixed price.  Contract construction involves three steps. "First, the court must decide whether the plain language of the contract is clear and unambiguous."  *Healthy-IT, LLC v. Agrawal*, 808 S.E.2d 876, 882 (Ga. Ct. App. 2017). "If it is, the contract is enforced as written according to its plain terms and no further construction is needed or allowed."  *Id.*  "However, if the language used in the contract is ambiguous, the court must apply the rules of contract construction to attempt to resolve any ambiguities."  *Id.*  "And if the ambiguities cannot be resolved by applying the rules of contract construction, then a jury must resolve the issue of what the ambiguous language means and what the parties intended."  *Id.*

The Georgia courts define "ambiguity to mean duplicity, indistinctness, an uncertainty of meaning or expression used in a

extension or renewals of the term.  Notwithstanding the foregoing, if the premises are purchase by a third party after Tenant fails to exercise its right of first refusal on a sale to that third party, then this Option to Purchase shall automatically become null and void.  If Tenant should receive notice of any offer pursuant to any right of first refusal to purchase or to lease either presently or subsequently held by Tenant, or if the premises are sold to any third party, this Option to Purchase shall be neither modified nor terminated.

Contract 15-16.

## DISCUSSION

The parties ask the Court to determine whether notice of an offer to buy pursuant to Article 27's right of first refusal terminates Article 29's option to purchase the property at a fixed price.  Contract construction involves three steps. "First, the court must decide whether the plain language of the contract is clear and unambiguous."  *Healthy-IT, LLC v. Agrawal*, 808 S.E.2d 876, 882 (Ga. Ct. App. 2017). "If it is, the contract is enforced as written according to its plain terms and no further construction is needed or allowed."  *Id.*  "However, if the language used in the contract is ambiguous, the court must apply the rules of contract construction to attempt to resolve any ambiguities."  *Id.*  "And if the ambiguities cannot be resolved by applying the rules of contract construction, then a jury must resolve the issue of what the ambiguous language means and what the parties intended."  *Id.*

The Georgia courts define "ambiguity to mean duplicity, indistinctness, an uncertainty of meaning or expression used in a

written instrument, and it also signifies being open to various interpretations." *Id.* (quoting *Shepherd v. Greer, Klosic & Daugherty*, 750 S.E.2d 463, 465 (Ga. Ct. App. 2013)). "Or to put it more simply, '[a] word or phrase is ambiguous when its meaning is uncertain and it may be fairly understood in more ways than one.'" *Id.* (alteration in original) (quoting *Freund v. Warren*, 740 S.E.2d 727, 730 n.4 (Ga. Ct. App. 2013)).

Articles 27 and 29 are ambiguous as to their application when a third party makes an offer higher than the option purchase price established in Article 29. In that context, they are directly contradictory and susceptible to different interpretations. Article 27 states "[n]either notice to Tenant of any offer to which this Article applies nor the sale of the Premises to a third party shall terminate any other options or rights . . . except for Tenant's Option to Purchase as set forth in New Article 29, below." Contract 13. One reasonable interpretation of this provision based on the plain language is that when Defendants notified McDonald's of the third-party offer and thus McDonald's right to match it pursuant to the right of first refusal, this notification only terminated McDonald's option to purchase established in Article 29. But this purported termination of the option to purchase in Article 29 directly conflicts with the plain language in Article 29 which explicitly states that the Option to Purchase "shall be neither modified nor terminated" if "Tenant should receive notice

6

of any offer pursuant to any right of first refusal to purchase[.]" Contract 16. Thus, one Article indicates that under the circumstances presented here the Article 29 option to purchase is terminated and another Article indicates that the Article 29 option survives.

The Court has struggled to interpret these provisions in a manner that gives the greatest possible effect to all provisions in the contract. *See VATACS Grp., Inc. v. HomeSide Lending, Inc.*, 623 S.E.2d 534, 537 (Ga. Ct. App. 2005) ("[A] contract must be interpreted to give the greatest effect possible to all provisions rather than to leave any part of the contract unreasonable or having no effect." (quoting *Vaughn, Coltrane & Assocs. v. Van Horn Const., Inc.*, 563 S.E.2d 548, 550 (Ga. Ct. App. 2002))). But quite frankly, this cannot be done here. Simply picking one conflicting provision over the other and rendering the other one meaningless achieves an arbitrary result, not an approximation of the parties' intent. The Court has likewise found the contract construction rules listed in O.C.G.A. § 13-2-2 unhelpful in resolving the conflict between these relevant provisions.

Finally, the Court is unpersuaded by Defendants' contention that the contract should be construed against McDonald's because it allegedly was the primary drafter of Articles 27 and 29. It appears from the present record that the lease agreement, including Articles 27 and 29, was the product of negotiation between two

7

sophisticated, represented parties. Thus, neither side is entitled to have the lease interpreted for or against it when the language is ambiguous.

Because the Court cannot resolve the ambiguity through application of the rules of contract interpretation, the Court may consider extrinsic evidence to determine what the parties intended when they drafted this contract. *Gans v. Ga. Fed. Sav. & Loan Ass'n*, 347 S.E.2d 615, 618-19 (Ga. Ct. App. 1986). But the present record does not permit the Court as a matter of law to determine the true intention of the parties when they agreed to Articles 27 and 29.[2] An evidentiary hearing is necessary for making that determination.

In light of the need for an evidentiary hearing, discovery may be necessary. Accordingly, the Clerk shall issue a Rules 16/26 order that requires the parties to confer and present the Court with a scheduling order designed to accomplish all discovery prior to an evidentiary hearing. The parties should include in that order whether they have a right to a jury trial for that hearing.

---

[2] Defendants submitted an older version of the Contract, arguing that it demonstrates that the current version of Article 27 was intended to eliminate Article 29's Option to Purchase. But Defendants' evidence does not explain the explicit language in Article 29 purporting to preserve the Option to Purchase in event of notice pursuant to Article 27.

CONCLUSION

The parties pending motions for judgment as a matter of law on their claims for declaratory relief (ECF Nos. 9 & 10) are denied. The Clerk shall issue a Rules 16/26 scheduling order. When discovery is completed, this matter will be set down for an evidentiary hearing. A decision will be made later as to whether the parties are entitled to a jury or bench trial on the issue of contractual intent.

IT IS SO ORDERED, this 5th day of October, 2021.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA